UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NOAH WOLF, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION** |
| | ) **COMPLAINT** |
| WILLIAM D. JOHNSON, JOHN H. MULLIN, E. MARIE MCKEE, CARLOS A. SALADRIGAS, JAMES E. BOSTIC, THERESA M. STONE, W. STEVEN JONES, ALFRED C. TOLLISON, HARRIS E. DELOACH, CHARLES W. PRYOR, ROBERT W. JONES, JAMES B. HYLER, JOHN D. BAKER, MELQUIADES R. MARTINEZ, DUKE ENERGY CORP., DIAMOND ACQUISITION AND CORP., AND PROGRESS ENERGY CORP. | ) ) **CASE No.**_____ ) ) ) ) ) ) ) ) ) ) ) |
| Defendants | ) |

Plaintiff Noah Wolf ("Plaintiff"), by his attorneys, alleges the following against Defendants upon information and belief, except for his own acts, which are alleged on knowledge, based upon, among other things, a continuing investigation conducted by and through his undersigned counsel into the facts and circumstances alleged herein, including, without limitation, review and analyses of: (i) the public filings of Progress Energy, Inc. ("Progress Energy" or the "Company") and Duke Energy Corporation and Diamond Acquisition Corporation (collectively, "Duke Energy") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, public statements, news articles, and other publications disseminated by or concerning Progress Energy and related entities and the Proposed Transaction (defined below); and (iii) Defendants' corporate websites:

## NATURE OF THIS ACTION

1. Plaintiff brings this class action against Progress Energy's Board of Directors (the "Board" or the "Individual Defendants") for the Board's breaches of its fiduciary duties arising out of its attempt to sell the Company to Duke Energy for an unfair price and pursuant to a flawed process, and against Progress Energy and Duke Energy for aiding and abetting the Board's breaches of its fiduciary duties.

2. Progress Energy is a Fortune 500 energy company with approximately 22,000 megawatts of generation capacity and approximately $10 billion in annual revenues. Progress Energy includes two major electric utilities that serve approximately 3.1 million customers in North Carolina, South Carolina and Florida.

3. On January 10, 2011, Duke Energy and the Company announced a definitive agreement, pursuant to which Duke Energy will acquire all of the outstanding shares of Progress Energy in an all-stock transaction whereby Progress Energy stockholders will receive 2.6125 shares of common stock of Duke Energy in exchange for each share of Progress Energy common stock. Based on Duke Energy's closing share price on January 7, 2011, the day before Defendants signed the merger agreement with Duke Energy, Progress Energy shareholder's would receive a value of $46.48 per share (the "Proposed Transaction") for the Company.

4. The Board breached its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. First, the Proposed Transaction value of $46.48 per share represents a tiny premium of just 3.9%, which is far less than the 17% average premium paid for U.S. electric utilities during the last two years, according to data compiled by Bloomberg.

5. In addition, the day before the Board signed the Merger Agreement, it rejected an offer by Dominion Resources Inc. ("Dominion"), agreeing to pay as much as a 15% premium to

acquire Progress Energy—four times the price Duke Energy agreed to pay for the Company in the Proposed Transaction. Further, as described in more detail below, the proposed consideration does not adequately account for Progress Energy's recent strong performance, future growth prospects, and the synergies expected to be realized by Duke Energy shareholders. Thus, the consideration Progress Energy shareholders are to receive is inadequate. Notwithstanding Dominion's higher offer, the Individual Defendants, in breach of their fiduciary duties, inexplicably entered into the preclusive and coercive Merger Agreement just one day later.

6. Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a competing offer for the Company. Specifically, pursuant to the merger agreement, dated January 8, 2011 (the "Merger Agreement"), Defendants agreed to the following: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even continuing discussions and negotiations with potential acquirors; (ii) a provision that provides Duke Energy with five business days to match any competing proposal in the event one is made; (iii) a provision remaining in effect for one year that requires the Company to pay Duke Energy a termination fee of $400 million in order to enter into a transaction with another bidder making a superior offer; and (iv) a provision that requires that the Board submit the Proposed Transaction to the Company's shareholders for approval even if the Board later believes that the Proposed Transaction would breach its fiduciary duties. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Progress Energy.

7. The Merger Agreement was negotiated by members of Progress Energy's Board while they were simultaneously negotiating employment arrangements and large executive compensation packages for themselves. Specifically, seven members of Duke's new board will be selected by Progress Energy's fourteen member Board. In addition, Progress Energy's current Chief Executive Officer, Defendant William Johnson ("Johnson"), will become CEO of the new and much larger Duke Energy. Johnson stands to receive up to $22 million upon consummation of the Proposed Transaction.

8. The Individual Defendants breached their fiduciary duties of loyalty, due care, good faith and fair dealing by, *inter alia*, failing to adequately consider other potential offers, agreeing to material preclusive deal protection devices and placing their own financial interests ahead of the Company's and shareholder's interests. Instead, by merging with a local "friendly suitor," the Individual Defendants disloyally favored their own interests in order to secure future employment and other lucrative financial benefits for themselves. Duke Energy and Progress Energy aided and abetted such breaches.

9. Plaintiff seeks to enjoin the Proposed Transaction as currently structured unless and/or until Defendants cure the breaches of fiduciary duty.

**JURISDICTION AND VENUE**

10. Jurisdiction over this matter is conferred upon this Court pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of California and all Defendants are citizens of jurisdictions other than California. The amount in controversy exceeds $75,000 exclusive of interest and costs.

11. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

12. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

**PARTIES**

13. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Progress Energy and is a citizen of California.

14. Defendant Progress Energy is a corporation organized and existing under the laws of the State of North Carolina. The Company maintains its principal corporate offices at 410 S. Wilmington St., Raleigh, North Carolina 27601.

15. Defendant Duke Energy, a Delaware corporation headquartered in North Carolina, is one of the largest electric power holding companies in the United States. Its regulated utility operations serve approximately 4 million customers located in five states in the Southeast and Midwest, representing a population of approximately 11 million people.

16. Defendant Diamond Acquisition Corporation is a North Carolina corporation wholly-owned by Duke Energy that was created for the purposes of effectuating the Proposed Transaction.

17. Defendant William Johnson, a citizen of North Carolina, has been the President, Chief Executive Officer, and Chairman of the Board of the Company since 2007. Johnson served as President and Chief Operating Officer of Progress Energy, from January 2005 to October 2007, and has been with the Company since 1992.

18. Defendant John Mullin has been a director of the Company since 2007 and is a citizen of Virginia.

19. Defendant E. Marie McKee has been a director of the Company since 1999 and is a citizen of New York.

20. Defendant Carlos Saladrigas has been a director of the Company since 2001 and is a citizen of Florida.

21. Defendant James Bostic has been a director of the Company since 2002 and is a citizen of Georgia.

22. Defendant W. Steven Jones has been a director of the Company since 2005 and is a citizen of North Carolina.

23. Defendant Alfred Tollison has been a director of the Company since 2006 and is a citizen of Georgia.

24. Defendant Harris DeLoach has been a director of the Company since 2006 and is a citizen of South Carolina.

25. Defendant Charles Pryor has been a director of the Company since 2007 and is a citizen of Virginia.

26. Defendant Robert W. Jones has been a director of the Company since 2007 and is a citizen of New York.

27. Defendant James Hyler has been a director of the Company since 2008 and is a citizen of North Carolina.

28. Defendant John D. Baker II has been a director of the Company since 2009 and is a citizen of Florida

29. Defendant Melquiades Martinez has been a director of the Company since 2010 and is a citizen of Florida.

30. Defendant Theresa M. Stone has been a director of the Company since 2005 and is a citizen of Massachusetts.

31.     Defendants referenced in ¶¶ 17 through 30 are collectively referred to as Individual Defendants and/or the Board.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

32.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they owe Plaintiff and the Class the highest duty of care, loyalty, good faith, candor, and independence. Each of the Individual Defendants is required to act in good faith, in the best interests of the, and with the degree of care that would be expected of an ordinarily prudent person.

33.     Where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest price reasonably available for the Company, rather than use a change of control to their own benefit, and to disclose all material information concerning the proposed change of control so as to enable shareholders to make an informed voting decision. To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value obtained for the Company's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value for the Company's shareholders reasonably available under the circumstances; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of Progress Energy's shareholders.

34. In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a) participating in any transaction where the Individual Defendants' loyalties are divided; and/or

(b) unjustly enriching themselves at the expense or to the detriment of the Company.

35. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly breaching their fiduciary duties, including their duties of care, loyalty and good faith owed to Progress Energy.

## CLASS ACTION ALLEGATIONS

36. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Progress Energy common stock and their successors in interest, except Defendants and their affiliates (the "Class").

37. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of January 11, 2011, Progress Energy has approximately 292.94 million shares outstanding.

(b) Questions of law and fact are common to the Class, including, *inter alia,* the following:

(i) Whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, and due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii) Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably available under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii) Whether the Individual Defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(iv) Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(v) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

(vi) Whether Progress Energy and Duke Energy aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(vii) Whether the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

38. Progress Energy is a Fortune 500 energy company with approximately 22,000 megawatts of generation capacity and $10 billion in annual revenues. Progress Energy is comprised of two major electric utilities that serve approximately 3.1 million customers in North Carolina, South Carolina and Florida.

39. The Company has been reporting strong financial and operational results. For example, on October 29, 2010, Progress Energy reported earnings and earnings per share for the third-quarter of 2010 of $361 million and $1.23 per share, respectively, as compared to $247 million and $.88 per share, respectively, for the third quarter of 2009. The Company's earnings per share for the first nine months of 2010 increased from $2.16 per share in 2009 to $2.53 per share in 2010.

40. In the October 29 press release announcing the Company's third quarter 2010 financial results, Defendant Johnson commented on the Company's strong quarter stating:

We achieved strong financial performance for our shareholders so far this year and successfully met high energy demand during one of the hottest summers on record. The economy in the Carolinas and Florida continues to show modest but steady signs of recovery, and we remain focused on managing costs and improving operations and execution. The third quarter was particularly strong in terms of weather, and higher revenues enabled us to increase our focus on investments and improvements in our nuclear program that will position those vital facilities to continue meeting our customers' energy needs reliably and affordably for decades to come. Due primarily to the continued strength in weather, the company is narrowing its 2010 ongoing earnings range to $3.00 to $3.05 per share, which is the high end of our previously announced guidance.

41. In addition, Progress Energy reported that the Company's total return for the year-ended December 31, 2009 was 10.4%, as compared to an average of 9.66% for its Benchmarking Peer Group. Progress Energy also increased its dividend payment in 2009 to $693 million, up from $642 million in 2008, representing the Company's twenty first consecutive increase in dividend payments. Defendant Johnson stated in the 2009 Annual Report that he foresaw the Company producing "average annual total shareholder return in the 7% to 10% range over the long term." In a letter attached to the 2009 Annual Report, Defendant Johnson stated that Progress Energy "posted good financial results in a challenging year. [Progress Energy] delivered a 10% total return to shareholders in 2009 and achieved ongoing earnings per share in our original targeted range for the fourth year in a row. Our Company also has . . . pa[id] a dividend for more than 250 consecutive quarters."

42. In an article dated November 15, 2010, an analyst on Zacks.com commented on Progress Energy's bright future stating:

> Future prospects appear bright given that it generates the majority of its earnings from stable, regulated electric operations. Furthermore, Progress Energy is pursuing the option of adding new nuclear capacities at both its Carolinas and Florida utilities.
>
> Additionally, Progress Energy is pursuing a balanced strategy for a secure energy future – formulating aggressive energy efficiency programs, investments in renewable energy technologies and a state-of-the-art electricity system.

43.     As demonstrated herein, the Company was reporting strong financial results and growth. Thus, there was no immediate need to enter into a sale of Progress Energy to Duke Energy at the grossly inadequate price offered in the Proposed Transaction.

***The Proposed Transaction***

44.     In a press release dated January 10, 2011, the Company announced that it had entered into the Merger Agreement with Duke Energy pursuant to which Duke Energy will acquire all of the outstanding shares of the Company for 2.6125 shares of common stock of Duke Energy in exchange for each share of Progress Energy common stock. Based on Duke Energy's closing share price on January 7, 2011, the proposed exchange ratio equates to approximately $46.48 per share, or $13.7 billion in total equity value. Duke Energy also will assume approximately $12.2 billion of Progress Energy's net debt.

45.     The combined company, to be called Duke Energy, will be the country's largest utility, with approximately $65 billion in enterprise value and $37 billion in market capitalization and will have the country's largest regulated customer base, providing service to approximately 7.1 million electric customers in six regulated service territories in North Carolina, South Carolina, Florida, Indiana, Kentucky and Ohio.

46.     The Proposed Transaction consideration is inadequate. First, the Proposed Transaction value of $46.48 per share represents a paltry premium of just 3.9% based on the $44.72 closing price of Progress Energy stock the day prior to the announcement of the Proposed Transaction. The 3.9% premium Duke Energy is paying for Progress Energy is less than the 17% average premium paid for U.S. electric utilities during the last two years, according to data compiled by Bloomberg. David Grumhaus, a partner and utilities expert at the Chicago hedge fund Copia Capital told Bloomberg News: "I don't like this deal at all if I'm Progress. It's hard to

see how they couldn't have held out for a bigger premium." He also told the publication *Trading Markets* that "people are really questioning what [this deal] really does for Progress."

47. In addition, the Proposed Transaction consideration fails to adequately account for the significant synergies created by the merger that will be realized mainly by Duke Energy and its shareholders. The merger is anticipated to be accretive to Duke Energy's adjusted earnings in the first year after closing. According to Marc de Croisset, an analyst at FBR Capital Markets, "Duke on a stand-alone basis, while deploying significant capital investment . . . was pretty much running to a standstill. One of the reasons this deal was consummated was to improve earnings growth for Duke."

48. Following completion of the Proposed Transaction, Duke Energy shareholders will own approximately 63 percent of the combined company and Progress Energy shareholders will own approximately 37 percent of the combined company on a fully diluted basis. However, Progress Energy is contributing 3.1 million customers, or 43%, to the combined company while Duke Energy is contributing 4 million customers, or 57%. In addition, Progress Energy is contributing 22,000 megawatts of power generation capacity, or 38.6%, to the combined company, while Duke Energy is contributing 61.4%. Accordingly, the ownership interest of Progress Energy's shareholders in the combined company is inadequate and does not sufficiently compensate the Company's shareholders.

49. Furthermore, Wall Street analysts, including JP Morgan, issued a price target for Progress Energy of $47.00 per share before the Proposed Transaction was announced, representing a significant premium over Duke Energy's switch offer price. *The Wall Street Journal* reported on January 9, 2011 that "Duke is paying a low premium to Progress's shares" and that the purported benefits from the transaction "are hazy."

50. Accordingly, Duke Energy is acquiring control of Progress Energy at a small premium, and at the most opportune time, when Progress Energy is trading at a huge discount to its intrinsic value.

51. The day before the Individual Defendants signed the Merger Agreement, Dominion offered to pay as much as a 15% premium to acquire Progress Energy— four times what Duke Energy has agreed to pay in the Proposed Transaction. The Board, however, did not adequately consider Dominion's proposal and went ahead with a preclusive and coercive Merger Agreement just one day later. As reported by Bloomberg, "Dominion Resources Inc., the Richmond, Virginia-based utility, made takeover overtures last week to . . . Progress in a last-ditch effort to prevent them from agreeing to merge," and "Dominion offered as much as a 15% market premium . . ."

***The Preclusive Deal Protection Devices***

52. As part of the Merger Agreement, Defendants agreed to onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

53. By way of example, §4.03(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Duke Energy. This section also demands that the Company terminate any and all prior or on-going discussions with other potential acquirors.

54. In addition, pursuant to §4.3 of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Duke Energy of the bidder's identity and the terms of the bidder's offer. Thereafter, should the Board determine that the

Case 5:11-cv-00058-D   Document 1   Filed 02/10/11   Page 14 of 20

14

unsolicited offer is superior, before the Company can terminate the Merger Agreement with Duke Energy in order to enter into the competing proposal, it must grant Duke Energy five business days notice, during which time Duke Energy is allowed to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid no longer remains a superior proposal. In other words, the Merger Agreement gives Duke Energy access to any rival bidder's information and allows Duke Energy a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor Duke Energy and piggy-back upon the due diligence of the foreclosed second bidder.

55. Furthermore, the Merger Agreement unlawfully restricts the Board from obtaining a superior offer by specifying the minimum size of any takeover proposal that the Board can even look at, and by disallowing the Board from negotiating with a bidder or providing it with data unless the Board somehow first determines—before negotiations—that the Bidder will purchase at least 50% of Progress. Nor can the Board communicate with an alternative bidder unless it proposes to acquire 20% or more of Progress.

56. In addition, the Merger Agreement provides that Progress Energy must pay a termination fee of $400 million to Duke Energy if Progress Energy decides to pursue a competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to submit a superior offer that is effective for one full year. The Merger Agreement effectively precludes the Board from further pursuing better offers.

57. Dominion made an offer one day before the Merger Agreement was signed that was approximately four times Duke Energy's offer, and the Merger Agreement precludes not

only the effective pursuit of that bidder, but any other bidder willing to pay more than the tiny 3.9% premium Duke Energy offered for the Company.

58. The Board must submit the Proposed Transaction for shareholder vote even if it withdraws or modifies its approval or recommendation of the Proposed Transaction. If the Board concludes that its failure to modify or withdraw its approval of the Merger Agreement violates its fiduciary obligations to the Company and its shareholders, it still must call a shareholder meeting for approval of the Proposed Transaction under the Merger Agreement.

59. Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

*Financial Benefits Received by the Individual Defendants*

60. Certain of the Individual Defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of Progress Energy's shareholders. Specifically, Defendant Johnson, the Company's Chairman, President and Chief Executive Officer, while negotiating the merger with Duke Energy, was also negotiating lucrative and preferential terms of employment for himself and Board members to the detriment of the Progress Energy's shareholders, who will only receive a scant 3.9% premium.

61. In this regard, Defendant Johnson will become President and Chief Executive Officer of Duke Energy following the completion of the Proposed Transaction. Furthermore, according to a Form 8-K filed with the SEC, Defendant Johnson entered into a term sheet with

Duke Energy, which entitles him "to severance equal to the benefits provided under the Progress Energy, Inc. Management Change-in-Control Plan." In sum, Johnson is eligible to receive a potential windfall from "severance" compensation of $22 million, while also receiving the benefits that will invariably come with the prestigious position of CEO of a now larger new Duke Energy.

62. In addition, the Merger Agreement provides that, upon completion of the Proposed Transaction, Duke Energy will have an eighteen member board of directors and allows the Progress Energy Board to nominate seven of the current directors of Progress Energy (out of a total of the fourteen), half of whom will be able to retain their potentially even more lucrative board memberships of the much larger new Duke Energy.

63. Johnson and the Board summarily rejected an offer from Dominion that provided a 15% premium for the Company just one day before signing the Merger Agreement and, instead, disloyally favored a transaction with Duke Energy in order to obtain the prestigious employment positions and lucrative financial benefits they negotiated simultaneously with the merger with Duke Energy, as discussed above.

64. Based on the aforementioned, the Proposed Transaction is wrongful, unfair and harmful to Progress Energy, and represents an effort by Defendants to aggrandize their own financial position and interests, accepting a paltry bid with a friendly company at the expense of, and to the detriment of, Progress Energy.

65. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duties
### (Against All the Individual Defendants)

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith and candor owed to Progress Energy's shareholders, and have acted to put their personal interests ahead of the interests of Progress Energy's shareholders and acquiesced to those actions by others.

68. The Individual Defendants acts alleged herein, individually and as part of a common plan, unfairly deprived Progress Energy's shareholders of the true value for the Company. Despite the Individual Defendants' fiduciary obligation to Progress Energy shareholders to get the best price for the Company, they failed to seriously consider other potential acquirers, and favored their own interests in order to accrue benefits to themselves, by selling out to a friendly suitor at an extremely low premium of 3.9%. The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company at a grossly low valuation.

69. The Individual Defendants have breached their fiduciary duties of loyalty, care and good faith owed to Progress Energy's shareholders, and have engaged in self-dealing, because, among other reasons:

    (a) they failed to take steps to maximize the value of Progress Energy and took steps to avoid competitive bidding;

    (b) they failed to properly value Progress Energy; and

    (c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

70. As a result of the Individual Defendants' breaches of their fiduciary duties, Progress Energy's shareholders will suffer irreparable injury in that they will not receive their fair portion of the value of its assets.

71. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Progress Energy's shareholders and may consummate the Proposed Transaction, to the irreparable harm of the Company's shareholders.

72. There is no adequate remedy at law.

## COUNT II
### Aiding and Abetting
### (Against Progress Energy and Duke Energy)

73. Plaintiff repeats all previous allegations as if set forth in full herein.

74. Defendant Progress Energy, by reason of its status as a party to the Proposed Transaction and its possession of non-public information, has aided and abetted the Individual Defendants in the aforesaid breach of their fiduciary duties. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Defendant Progress Energy, which aided and abetted such breaches in the sale of the Company to Duke Energy.

75. Defendant Duke Energy, by reason of its status as a party to the Proposed Transaction and its possession of non-public information, has aided and abetted the Individual Defendants in the aforesaid breach of their fiduciary duties. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant Duke Energy, which therefore, aided and abetted such breaches in the sale of Progress Energy to Duke Energy.

76. Unless the actions of Defendants Progress Energy and Duke Energy are enjoined by the Court, Defendant Progress Energy and Duke Energy will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties.

77. As a result, Progress Energy's shareholders are being harmed.

78. There is no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff and the undersigned counsel as class representatives;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D) directing that the Individual Defendants account to Plaintiff and the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) Awarding Plaintiff and the Class appropriate compensatory damages;

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) Awarding such other and further equitable relief as this Court deems just and proper.

This 9th day of February, 2011.

*Counsel for Plaintiff:*
LEVI & KORSINSKY, LLP
Eduard Korsinsky, Esq.
Shannon Hopkins, Esq.
W. Scott Holleman, Esq.
Allen Schwartz, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Local Counsel for Plaintiff:*

THE MAITLAND LAW FIRM
Robert N. Maitland, II, Esq.
NC Bar #28653
2 Couch Road
Chapel Hill, NC 27514
Tel: (919) 265-0800
Fax: (919) 960-9554